UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PETER D. GAGE, JR.,

                              Plaintiff,                 DECISION AND ORDER

-vs-

                                                   1:18-CV-1506 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

INTRODUCTION

Plaintiff Peter D. Gage, Jr., brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Sept. 6, 2019, ECF No. 12; Def.'s Mot., Nov. 5, 2019, ECF No. 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is denied, the Commissioner's motion (ECF No. 13) is granted, and the Clerk is directed to close this case.

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. Plaintiff filed his DIB application on March 17, 2015,

1

alleging an onset date of October 1, 2014. Record[1] ("R.") 108, June 18, 2019, ECF No. 7. Plaintiff also filed an application for SSI benefits on March 17, 2015. R. 117. In both applications, Plaintiff identified back pain and his right arm amputation in boyhood[2] as the reasons for his disability. R. 108, 117. On June 30, 2015, the Commissioner notified Plaintiff that he did not qualify for either DIB or SSI benefits. R. 126. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 136.

Plaintiff's request was approved and the hearing was held in Buffalo, New York, on September 28, 2017. R. 30. Plaintiff appeared with his attorney, Jeanne Murray. R. 32. Vocational expert Joey M. Kilpatrick testified by telephone. R. 90–104. In a submitted "Prehearing Memorandum," Attorney Murray summarized Plaintiff's claims for the ALJ as follows:

> The claimant is unable to perform the sitting, standing, and walking requirements of even sedentary work. Additionally, due to his experience of chronic pain, fatigue and mental health symptoms, the claimant is unable to maintain a fulltime work schedule or maintain productivity at a competitive rate.
>
> The claimant's limitations are caused by impairments that include right arm pain status post-surgical reattachment, left carpal tunnel syndrome post-release surgery, chronic back pain, chronic pain syndrome, cervicalgia, type II diabetes, diabetic neuropathy, PTSD, and depression.

R. 312 (internal citations to the record omitted).

---

[1] Record refers to the Transcript, June 18, 2019, ECF No. 7.
[2] Plaintiff's date of birth is listed as July 28, 1984. R. 108. The accident that led to the amputation and re-attachment of his right arm occurred on January 1, 1995. R. 674.

In her decision on January 8, 2018, the ALJ found that Plaintiff was not disabled. R. 12. On October 10, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. R. 1–6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

STANDARD OF REVIEW

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). 42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner as to whether a claimant has a "disability" that would entitle him or her DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3).

A reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp.3d 260, 264 (W.D.N.Y. 2014) (citations omitted). To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). It is not the reviewing court's function to determine *de novo* whether a plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the

Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)).

When a mental impairment is alleged, the regulations also require the ALJ to apply a "special technique" at the second and third steps to determine the degree, if any, of the claimant's mental impairment. *Petrie v. Astrue*, 412 Fed. Appx. 401, 408 (2d Cir. 2011) (citing 20 C.F.R. §404.1520a). If the claimant does have such an impairment, the ALJ must rate the claimant's limitations in four broad functional areas. *Id.* As amended in 2017, 20 C.F.R. § 404.1520a(c)(3) and §416.920a(c)(3) identify these four broad areas as (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. The ALJ's written decision must reflect the application of the special technique, and "include a specific finding as to the degree of limitation in each of the [four] functional areas." *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a(e)).

5

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

The ALJ's Decision

In this case, the ALJ found that the Claimant met the insured status requirements of the Social Security Act through December 31, 2019. R. 17. The ALJ then followed the five-step sequential evaluation process and found that Plaintiff was not disabled from October 1, 2014 through January 8, 2018, the date of her decision. R. 17–25.

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2014, the alleged disability onset date. R. 18. At step two, the ALJ determined that Plaintiff had the following severe impairments: history of traumatic right arm amputation and surgical re-attachment, and diabetes mellitus with neuropathy. R. 18–20. Notably, the ALJ found that despite claims of back pain, Plaintiff "does not have a severe medically determinable lumbar spine impairment." R. 18–19. The ALJ also found that Plaintiff's left carpal tunnel syndrome is not severe, that his diagnosis of chronic pain syndrome was "provisional at best," that his hepatitis C and GERD[3] caused only minimal

---

[3] GERD is the acronym for gastroesophageal reflux disease. *See*, "gastroesophageal reflux disease (GERD)," Stedmans Med. Dictionary, entry 255030 (Thomson Reuters 2014). GERD is "a syndrome

6

limitations in Plaintiff's ability to perform work-related activities, and that there is no evidence the claimant has any mental impairments that would limit him in the four broad functional areas identified by 20 C.F.R. § 404.1520a and § 416.920a. R. 19–20.

At step three of the analysis, the ALJ determined that Plaintiff's physical impairments, considered either individually or in combination, did not meet or medically exceed the severity of one of the Commissioner's listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. R. 20. Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), with the exceptions that Plaintiff:

> Can never push, pull, reach, handle or fingering [sic] with the non-dominant right upper extremity, but can use the right upper extremity as a support or guide; can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs, but can never climb ladders, ropes, or scaffolds; and can have no exposure to hazards such as unprotected heights or moving machinery.

---

due to structural or functional incompetence of the lower esophageal sphincter (LES), which permits retrograde flow of acidic gastric juice into the esophagus." *Id*.

7

R. 20. Based on this RFC, and on the testimony of the vocational expert, the ALJ found that Plaintiff was capable of performing his past relevant work as a tractor-trailer truck driver, dump-truck driver, and milk driver as he actually performed it. R. 23. Based on the vocational expert's testimony, the ALJ also found that Plaintiff could perform such representative sedentary work as a telephone order clerk and a call-out operator. R. 24. Hence, the ALJ concluded that Plaintiff was not disabled between October 1, 2014 and January 8, 2018. R. 23.

In seeking reversal of the Commissioner's decision, Plaintiff argues the ALJ committed two errors: (1) finding that Plaintiff's mental impairments were non-severe, despite substantial evidence and an opinion from Plaintiff's treating counselor, and then failing to account for those mental health impairments and limitations in her RFC; and (2) formulating an RFC that was based on the ALJ's own lay opinion and was not supported by substantial evidence. Pl. Mem. of Law, 17, 23, Sept. 6, 2019, ECF No. 12-1. For the reasons that follow, this Court finds no merit in Plaintiff's arguments.

The ALJ's Findings Regarding Plaintiff's Mental Impairments

At step two of the five step sequential analysis, the ALJ found that Plaintiff did not have a severe medically determinable mental impairment. R. 20. In so doing, the ALJ noted that "the evidence of record does not contain a diagnosis from acceptable sources," and that the records from Plaintiff's mental health counselor, Licensed Master Social Worker Melody Murray ("LMSW Murray"), and her colleague

8

Nurse Practitioner Nancy Fenton, reflected "no significant abnormalities . . . except that the claimant was sometimes mildly tangential. [Plaintiff] simply reported a history of angry and violent behavior." R. 20. More important to the ALJ was that "essentially all of the mental status exams contained in the rest of the medical evidence record, which were performed by acceptable medical sources, are consistently unremarkable." R. 20. Lastly, the ALJ observed that there was "not a scintilla of correlation between the symptoms" indicated in the opinion evidence LMSW Murray, and the "entire body of evidence of record." R. 20. Accordingly, the ALJ applied the special technique from 20 C.F.R. § 404.1520a and determined Plaintiff had no limitations in any of the four broad areas of mental functioning.

Plaintiff points out that the ALJ's analysis fails to acknowledge the treatment notes from Plaintiff's September 22, 2017, visit to Physician's Assistant Chad Chitester ("PA Chitester") at Family Health Medical Services, PLLC, which "diagnosed" Plaintiff with post-traumatic stress disorder ("PTSD"). R. 765. This record (the "September 22 record") includes an electronic signature from Alex Selioutski, M.D., and a comment that PA Chitester's "note and patient's chart [was] reviewed," and that Dr. Selioutski agrees with the "medical management; no changes suggested." R. 766. Plaintiff argues that, as a result of this oversight, the ALJ's "entire evaluation of Plaintiff's mental health impairments is flawed," because a "diagnosis" from a medical source would have added more weight to LMSW Murray's opinion and treatment notes. Reply, 2, Nov. 26, 2019, ECF No. 14. The Court

9

disagrees.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is severe. *See O'Connor v. Comm'r of Soc. Sec.*, No. 1:18-CV-00740 CJS, 2020 WL 1242408, at *2–3 (W.D.N.Y. Mar. 16, 2020) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995)). At this step, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities . . . ." *O'Connor*, 2020 WL 1242408 at *3 (quoting *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28 at *4 (S.S.A. 1985)). Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). The severity determination is intended to "increase[ ] the efficiency and reliability of the [disability] evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

Here, the Plaintiff makes much of PA Chitester's "diagnosis" of Plaintiff as having PTSD, and the subsequent sign-off by Dr. Seiloutski, in the September 22 record. *See* R. 761-766. Yet the Court questions whether the September 22 record is accurately characterized as a "diagnosis." The September 22 record indicates that the purpose of Plaintiff's visit was "Diabetic follow-up." R. 761. Despite two pages of labs and extensive comments under the assessment of diabetes mellitus with hyperglycemia, the only reference to PTSD in the record is a "subjective" note that

Plaintiff "follows with MH[4]," and a comment under the "diagnosis" of PTSD that reads "per MH." R. 761, 765. There is no indication that Plaintiff's mental health was evaluated during his appointment at all, other than a cursory mental status exam that revealed "Patient's attitude is appropriate. Mood is normal. Affect is normal." R. 765.

Nevertheless, even assuming the September 22 record is a proper diagnosis, merely establishing that a person has been diagnosed with an impairment "is not, by itself, sufficient to render a condition 'severe.'" *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp.3d 282, 296 (W.D.N.Y. 2016) (quoting *Taylor v. Astrue*, 32 F. Supp.3d 253, 265 (N.D.N.Y. 2012) (internal quotation marks omitted)).

Instead, the claimant must present *medical evidence* to show that he has a medically severe impairment. *See Bowen*, 137 U.S. at 146; SSR 85-28 at *4. Regardless of whether or not the ALJ recognized the September 22 record as a diagnosis, LMSW Murray's opinion expressed in her "Mental Residual Functional Capacity Questionnaire" (R. 668-672) and her treatment notes from counseling sessions are not medical evidence. As a social worker, evidence from LMSW Murray qualifies only as "evidence from a nonmedical source" pursuant to 20 C.F.R. § 404.1513(a)(4). *See also* 20 C.F.R. § 416.913(a)(4); *Hanchett v. Colvin*, 198 F. Supp. 3d 252, 262 (W.D.N.Y. 2016).

---

[4] Presumably, "MH" stands for "Mental Health." *See, e.g., Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184-FPG, 2014 WL 7359027, at *10 (W.D.N.Y. Dec. 23, 2014) (interpreting a doctor's notes that a claimant had significant "pysch/mh issues" as indicating significant mental health issues).

In fact, there is nothing in that record that would qualify as "objective medical evidence" or a "medical opinion" as defined in § 404.1513(a)–(b) that suggests Plaintiff has a severe mental impairment.[5] The only medical opinion in the record, that of consultative examiner Dr. Samuel Balderman, makes no mention of any mental impairments. R. 424. Moreover, Plaintiff's treatment records do not provide any objective medical evidence of a mental impairment. Not including the September 22, 2017 "diagnosis" of PTSD, the treatment notes from all three of Plaintiff's other visits to Family Health Medical Services that were reviewed and approved by Dr. Selioutski indicate that the routine mental status exam showed that Plaintiff's attitude was cooperative and his orientation intact. R. 533, 537, 555. A representative exam by PA Chitester on July 6, 2017, that was reviewed by Dr. Selioutski characterized Plaintiff as "[b]right and interactive. Attention span and concentration are normal. Judgment is realistic. Insight is appropriate." R. 770. Similarly, mental status exams in treatment notes from Plaintiff's visits to Jamestown Area Medical Associates in 2015 and 2017 showed Plaintiff was oriented to time and place with a normal mood/affect. R. 581, 591. Even the diagnosis from the September 22 record does not qualify as "other medical evidence" under § 404.1513(c) for claims filed before March 27, 2017, as Plaintiff's was.

---

[5] Under 20 C.F.R. § 404.1513(a)(1), "[o]bjective medical evidence is medical signs, laboratory findings, or both . . . ." Under § 404.1513(a)(2), "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in a list of work-related activities.

12

Lastly, the Court also disagrees with Plaintiff's contention that the harm from the ALJ's improper step two analysis was compounded by the error of failing to account for Plaintiff's mental impairments in Plaintiff's RFC. Pl. Mem. of Law at 17. The burden of showing a medically determinable impairment is on the claimant. *Bowen*, 482 U.S. at 146. With no medical evidence of a mental impairment in the record, and a specific finding that Plaintiff had no limitations in four broad areas of mental functioning as required by the "special technique" in 20 C.F.R. § 404.1520a and § 416.920a, there was no medically determinable mental impairment for the ALJ to account for in Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(2) and § 416.945(a)(2) ("We will consider all of your medically determinable impairments . . . when we assess your residual functional capacity.")

The ALJ's RFC Determination

Dr. Samuel Balderman conducted a consultative examination of Plaintiff for physical impairments on June 25, 2015. R. 424–427. After examination, Dr. Balderman opined that Plaintiff had "[m]arked limitation in the use of the right arm for gross or fine motor work. Moderate to marked limitations in repetitive bending and lifting." R. 426–427. In formulating Plaintiff's RFC, the ALJ gave "great weight" to Dr. Balderman's opinion regarding the marked limitation in Plaintiff's right arm, as it is "clearly consistent with the [Plaintiff's] history of amputation" and the evidence in the record as a whole. R. 21–22. However, the ALJ gave only "partial weight" to Dr. Balderman's opinion that the claimant is limited in bending

13

and lifting because "[i]t appears Dr. Balderman is basing his opinion on a spine impairment that does not exist. Alternatively, the related clinical signs Dr. Balderman identifies in his exam are essentially absent after 2015." R. 22.

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ relied on her own lay opinion in determining that Plaintiff possessed the RFC to perform sedentary work. Pl. Mem. of Law at 23. Specifically, Plaintiff contends that the ALJ "set her own opinion against the expertise of Dr. Balderman, who opined that Plaintiff had a lumbar spine impairment, which the ALJ erroneously concluded did not exist." *Id.* at 28. Indeed, Plaintiff contends "[i]t is unclear exactly what the ALJ relied upon in finding that Plaintiff could perform a range of sedentary work . . . [because] [t]he ALJ's RFC is not even consistent with Plaintiff's hearing testimony . . . ." *Id.* at 29.

The Court disagrees. Although the ALJ's RFC finding did not perfectly correspond with the consultative examiner's opinion regarding limitations from a spinal impairment, the ALJ weighed all of the evidence available and made an RFC finding consistent with the record as a whole. Hence, there is no legal error and there is substantial evidence in the record to support the RFC.

20 C.F.R. § 404.1545(a)(3) and § 416.945(a)(3) provide that the Commissioner will assess a claimant's RFC based on all relevant medical and other evidence. "Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by

14

substantial evidence." *Smith v. Saul*, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) (collecting cases). Nevertheless, an ALJ's RFC determination need not perfectly correspond with the opinion of a medical source, provided she has weighed all of the evidence available to make an RFC finding consistent with the entire record. *Matta v. Astrue*, 508 App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole."). *See also, Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (finding it is not reversible error for an ALJ to make an RFC finding without the benefit of a medical opinion, provided the record is otherwise complete).

In Dr. Balderman's medical source statement in this case, the sentence immediately following his opinion on Plaintiff's bending and lifting limitations instructs that an "MRI of the lumbar spine should be reviewed for clinical confirmation" of the limitations he suggested. R. 427. The MRI to which Dr. Balderman referred was apparently conducted later that day by Dallen Ashby, M.D. of Jamestown Radiologists. R. 423. In a review of three MRI images of Plaintiff's lumbar spine, Dr. Ashby found no fractures, no lesions, no stenosis and preserved intervertebral disc spaces. *Id*. Dr. Ashby concluded that Plaintiff had a "[n]ormal lumbrosacral spine." *Id*. Consequently, although the ALJ's choice of words was

15

unfortunate[6], her conclusion that no spinal impairment exists was supported by objective medical evidence. R. 22.

Further, although Dr. Balderman's is the only medical opinion in the record, both the medical evidence and Plaintiff's testimony at his hearing are consistent with the ALJ's statement that "the clinical signs" in Dr. Balderman's exam are essentially absent after 2015. On June 1, 2015, Plaintiff visited Family Health Medical Services, PLLC to establish care and due to back pain. R. 375. After the exam by Jeremy Riedesel, M.D., Plaintiff was prescribed pain medication and sent for an MRI. R. at 378. That MRI, interpreted by Otis Colvin, M.D., showed "[d]iffuse spinal canal narrowing" but an otherwise "unremarkable MRI lumbar spine." R. 374.

Thereafter, the bulk of the medical evidence in the record relates to Plaintiff's carpal tunnel surgery on his left wrist in July 2015 (R. 622), his physical therapy on his left wrist in November and December 2015 (R. 626, 630), esophagitis in November 2015 (R. 613), and liver dysfunction in January through July 2017 (e.g., R. 640, 645, 648). Plaintiff was also diagnosed with diabetes mellitus during that time period, and records from his primary care providers indicate that his back pain was likely caused by neuropathy to be treated with medication. *See, e.g.,* R. 479 (noting Plaintiff had started taking Cymbalta daily for his neuropathy, and was "feeling much better").

---

[6] The ALJ explained that she gave partial weight to Dr. Balderman's opinion on Plaintiff's lifting and bending limitations because "[i]t appears Dr. Balderman is basing his opinion on a spine impairment that does not exist." R. 22. While not reversible error in this case, this bit of apparent sarcasm is discouraged by the Court, as the phrase created unnecessary ambiguity in the decision.

16

The ALJ's RFC is also consistent with the hearing testimony as it pertains to limitations from Plaintiff's alleged spinal impairment. Fairly early in the hearing, the ALJ asked Plaintiff, "We have no treatment records it looks like for almost a year from late 2015 until the fall of 2016. Why?" R. 53–54. After an ambiguous response, the ALJ followed up, "What treatment were you getting for anything from December 2015 to October 2016?" R. 55. Plaintiff responded, "I'm only getting medication . . . I'm not getting any other treatment." R. 55. The ALJ later revisited the point when Plaintiff began describing his lower back pain: "Have you had any testing for neuropathy?" R. 58. Plaintiff responded, "it wasn't testing. It was just my doctor diagnosing me with it . . . ." R. 58.

Later in the hearing, Plaintiff's attorney questioned Plaintiff about whether he could sit, stand, walk and for how long. After Plaintiff indicated that he could not sit for more than forty-five minutes, the ALJ asked him why. R. 66. Plaintiff alluded skeptically to the diagnosis of neuropathy, and the ALJ pressed him: "Why haven't you sought other medical treatment?" R. 68. Plaintiff responded that he had seen another doctor – transcribed as "Dr. Slotsky" – who called him a liar because the doctor had ordered an MRI on his back and did not see anything. R. 69. Presumably, this "Dr. Slotsky" was in fact Dr. Selioutski, who had signed off on treatment notes from Plaintiff's follow-up visit to Family Health Medical Services PLLC after the MRI in early June 2015 that revealed spinal narrowing but was otherwise unremarkable. R. 382.

17

Based on these and other similar exchanges during the course of Plaintiff's testimony, the ALJ found that claimant's statements about the intensity, persistence and limiting effects of his back pain were inconsistent with the record "because they are rebutted by the lack of significant clinical and diagnostic evidence after 2015 . . . ." R. 22.

Although the ALJ's RFC may not perfectly correspond with the medical opinion of Dr. Balderman, the Court finds that the ALJ's RFC was not based on her own lay opinion. Rather, it was the product of the ALJ weighing all of the evidence available to make an RFC finding consistent with the record as a whole.

CONCLUSION

For the reasons discussed above, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 12) is denied, and the Commissioner's motion (ECF No. 13) is granted. The clerk is directed to close this case.

DATED: March 25, 2019
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge